IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
GWENDOLYN CRAFT, BRANDY        )
CRAFT, and JULIE BUTLER,       )
                               )
      Plaintiffs,              )
                               )        CIVIL ACTION NO.
      v.                       )         2:14cv93-MHT
                               )            (WO)
TRIUMPH LOGISTICS, INC.,       )
and RECO GEROME WILLIAMS,      )
                               )
      Defendants.              )
```

OPINION

In this case stemming from a traffic accident between a car and a large truck, plaintiffs Gwendolyn Craft, Brandy Craft, and Julie Butler sued defendants Triumph Logistics, Inc. and Reco Gerome Williams, asserting claims of not only negligence but also claims of wantonness against Triumph and Williams (hereinafter "wantonness claims"), as well as negligent- and wanton-training claims against Triumph only (hereinafter "training claims"). Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity).

The case is before the court on the defendants'
motion for partial summary judgment on the plaintiffs'
wantonness claims against both Triumph and Williams and
on the plaintiffs' training claims against Triumph.[*]
The motion will be granted.


## I.   SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying
each claim or defense--or the part of each claim or
defense--on which summary judgment is sought.    The
court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material

---

[*]    The plaintiffs also charge the defendants with
"gross negligence."    Under Alabama law, gross
negligence is a degree of negligence; it is not the
same as wantonness.   See Miller v. Bailey, 60 So. 3d
857, 867 (Ala. 2010) ("Gross negligence is negligence,
not wantonness.")   (internal citations omitted);
Armistead v. Lenkeit, 160 So. 257, 259 (Ala. 1935)
("Gross negligence is defined as a want of slight care,
as distinguished from ordinary care, on the one hand,
and less culpable than wanton injury, on the other.")
Because the defendants did not move for summary
judgment on negligence, this opinion will not address
these claims.   These claims survive.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

Gwendolyn Craft was driving a rented minivan from New Orleans, Louisiana to Atlanta, Georgia to watch a professional football game. She had three passengers in the car, including the two other plaintiffs in this suit. The weather conditions were clear, and the traffic was normal for a weekday afternoon.

On a northbound stretch of highway between Mobile and Montgomery, Alabama, the plaintiffs were involved in a car accident with Reco Williams, who was employed by Triumph and driving a commercial-freight truck. Craft was driving in the left lane, and Williams was adjacent in the right lane. Without looking into his

driver-side mirror, Williams crossed over into Craft's lane.  Craft swerved left off the highway to avoid a collision with Williams's truck, passing onto the shoulder and then driving into the grass.  Without slowing down, Craft then swerved right, and her minivan began to spin.  Craft reentered the roadway mid-spin, crashing twice into Williams's truck.  Craft and her passengers sustained injuries.


## III. DISCUSSION

Triumph and Williams move for partial summary judgment on the plaintiffs' wantonness claims based on Williams's operation and driving of the truck, and on the plaintiffs' negligent- or wanton-training claims.


### A. Wantonness Claims Against
### Triumph and Williams

To hold a defendant liable for wanton conduct in Alabama, a plaintiff must establish a high degree of culpability.  While negligent conduct is characterized by "inattention, thoughtlessness, or heedlessness" and

**4**

"a lack of due care," <u>Monroe v. Brown</u>, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) (Thompson, J.), wantonness is characterized by "a conscious act."    <u>Ex parte Essary</u>, 992 So. 2d 5, 9 (Ala. 2007) (internal citations omitted).   Wantonness is willful misconduct undertaken with the knowledge that the likely or probable result will be injury, that is, with a <u>conscious</u> disregard for the rights or safety of others.   <u>See, e.g.</u>, <u>Alfa Mut. Ins. Co. v. Roush</u>, 723 So. 2d 1250, 1256 (Ala. 1998); <u>Bozeman v. Central Bank of the South</u>, 646 So. 2d 601 (Ala. 1994).   Wantonness can also be established by <u>reckless</u> disregard for the rights or safety of others. <u>See</u> 1975 Ala. Code § 6-11-20(b)(3).   Wantonness is, therefore, "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."   <u>Id</u>.   Because negligence is the "inadvertent omission of duty," and wantonness is about the "state of mind with which the act or omission is done," <u>Essary</u>, 992 So. 2d at 9, the Alabama Supreme Court has explained: "Wantonness is not merely a higher

degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." Tolbert v. Tolbert, 903 So. 2d 103, 114 (Ala. 2004) (internal citations omitted); see also Jinright v. Werner Enterprises, Inc., 607 F. Supp. 2d 1274, 1275–76 (M.D. Ala. 2009) (Thompson, J.).

Alabama courts will allow a jury to determine whether conduct was wanton if there is any evidence that would allow that determination. Cash v. Caldwell, 603 So. 2d 1001, 1003 (Ala. 1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness."). This determination of consciousness or recklessness underlying the question of wantonness may rely on inferences drawn from the circumstances. Klaber v. Elliott, 533 So. 2d 576, 579 (Ala. 1988).

The plaintiffs argue that Williams was wanton because he failed to look to his left or signal before

6

he drove his vehicle into the left lane.  However, this conduct, on its own, is not sufficient to create a genuine issue of material fact concerning wantonness. To establish wantonness, the evidence must support a conclusion that the defendant engaged in conduct conscious, or in knowing disregard, that it was likely to cause injury.  But the plaintiffs have not pointed to any evidence that would allow a jury to determine, consistent with Alabama law, that Williams had the requisite level of consciousness and awareness that his moving into the plaintiffs' lane would likely cause injury.  Simply put, the fact that Craft saw Williams's truck move over into her lane does not prove that he knew that he was moving into their lane--for he could have been drifting without realizing he was doing so-- and that by doing so he knew, or recklessly disregarded, that he likely would harm others on the road.  See Essary, 992 So. 2d at 9. (defining wantonness as "the conscious doing of some act ... while knowing of the existing conditions and being

7

conscious that, from doing ... an act, injury will likely or probably result.") (emphasis in original). If mere inattention, <u>without something more that contributes to the accident</u>, that is, <u>without some exacerbating circumstance</u>, could constitute wantonness, then the concepts of negligence and wantonness would collapse into one.

Moreover, under Alabama law, there is a presumption that "courts do not expect an individual to engage in self-destructive behavior." <u>Jinright</u>, 607 F. Supp. 2d at 1276 (internal citations omitted). When the dangerous behavior at issue is "similarly likely to harm the perpetrator (as it is, for example, in most cases involving car accidents)," Alabama courts presume that defendants do not engage consciously in that behavior. <u>Id</u>. Here, for example, the presumption is that Williams would not have changed lanes deliberately if he were aware that it would cause an accident in which he could be injured.

The court recognizes the limitations of this presumption in a situation, such as this one, where the defendant is driving a tractor-trailer truck. When a large commercial truck is involved in a crash with a much smaller passenger vehicle, the truck driver may be shielded from some of the impact of the crash.

Yet this asymmetry does not change the court's analysis here. First, automobile accidents can set off a series of unpredictable reactions, and the presumption against self-destruction means that any driver will attempt to avoid them. Second, a driver of a large truck cannot be sure that he or she is surrounded by only smaller vehicles. Because there are so many trucks on highways, the driver of a large truck bears the substantial risk of colliding with not only smaller vehicles but also with equally large, if not larger, vehicles. (Indeed, because, under the plaintiffs' version of the facts, Williams did not look before crossing over, there reasonably could have been a vehicle at his left that was the same size as his

truck, or larger, that could have put him in serious danger.)  Third and finally, there is no evidence that the fact Williams was driving a large truck played any role in the accident.  <u>Cf</u>. <u>Fike v. Peace</u>, 964 So. 2d 651, 662 (Ala. 2007) (rejecting argument that hauling an oversized load constitutes an "inherently dangerous" activity "because the major risk of harm from the oversized load could have been alleviated if [defendants] had used reasonable care.").

To conclude otherwise would mean that any collision between a car and a large truck, resulting from mere negligence or inattention of the driver of the larger vehicle, always would constitute wantonness.  Instead, there must be some exacerbating or differentiating circumstance.  <u>See, e.g.</u>, <u>Griffin v. Modular Transp. Co.</u>, 2014 WL 896627, at *4 (N.D. Ala. 2014) (Acker, J.) (finding evidence of wantonness in case where only the flatbed portion of tractor-trailer truck was blocking the highway, not the cabin with the driver's seat, because "[a] collision between a car and the <u>flatbed</u>

10

portion of a tractor trailer does not carry the same
risk of injury to the trailer driver as it does to the
car driver") (emphasis in original).

However, the presumption that a defendant did not
consciously engage in self-destructive behavior is
rebutted when there is reason to believe that the
defendant was suffering from impaired judgment (such as
alcohol consumption) or the act itself is "so
inherently reckless that it would signal the kind of
depravity consistent with disregard of instincts of
safety and self-preservation." Jinright, 607 F. Supp.
2d at 1276-77 (citing Ex Parte Essary, 992 So. 2d 5, 16
(Ala. 2007)).  "Inherently reckless" behavior, for
example, might be driving in reverse on a major
interstate, see Johnson v. Baldwin, 584 F. Supp. 2d
1322 (M.D. Ala. 2008) (Thompson, J.); driving through
an intersection "at a very fast speed" after ignoring a
stop sign, see Clark v. Black, 630 So. 2d 1012, 1016
(Ala. 1993); or abruptly moving from the right lane
into the left lane after seeing a video store on the

11

left and deciding to stop and get a movie. <u>Green v.
Leatherwood</u>, 727 So. 2d 92 (Ala. Civ. App. 1998). In
each of these instances, something more than mere
inattention, that is, an exacerbating circumstance,
contributed to the accident.

Here, there is no evidence that Williams suffered
from impaired judgment. He held a valid commercial
driver's license and was qualified to operate his
vehicle. There is no evidence that he had used drugs
or alcohol, or was talking on his phone or texting.
And he was not over his commercially allowed 'service
hours' at the time of the accident.

There is also no evidence that Williams's conduct
was inherently reckless. The failure to adjust one's
driving to accommodate special dangers on the road,
such as bad weather or reduced visibility, may evidence
the kind of recklessness from which a driver's
consciousness or reckless disregard of probable harm
could be inferred. <u>See, e.g.</u>, <u>Hornady Truck Line, Inc.
v. Meadows</u>, 847 So. 2d 908 (Ala. 2002) (finding

evidence of wantonness when truck driver failed to check his mirrors and drifted or merged into the left lane, where the truck was traveling at an unsafe speed during a heavy storm). As the court explained in Hornady, a factfinder could impute conscious disregard to a truck driver operating his vehicle at an unsafe speed during a bad storm because the driver "knew the weather conditions," "knew the road conditions" and "knew the speed at which their vehicles were traveling." Id. at 915. The plaintiffs in that case brought negligence and wantonness claims, and, while "inattention alone was sufficient to allow the case to go to the jury on the negligence claim," the court found that the combination of the speed of the truck and the weather conditions, coupled with the driver's inattention, was also sufficient to submit the wantonness claim to the jury. Id. at 915, 916.

In this case, however, the plaintiffs have not presented evidence of unsafe road conditions such that Williams's knowledge of those conditions, coupled with

13

his inattentiveness, could support an inference of wantonness. Nor is there is any evidence that Williams was driving at an unsafe speed or engaging in any other reckless conduct.

At best, Williams inattentively drifted into the left lane; at worst, he deliberately merged into the left lane without signaling or checking his mirrors. But even "failing to look to one's left before crossing a lane, while imprudent and likely negligent, is not so inherently reckless as to signal the kind of depravity required by Essary. It is also, quite simply, not suggestive of the kind of knowledge of likely injury required by the consciousness standard applied to wantonness claims in Alabama." Jinright, 607 F. Supp. 2d at 1277.

Therefore, because the plaintiffs have not provided any facts from which it could be inferred that Williams consciously or recklessly caused the accident, their submissions show "a total lack of evidence from which the jury could reasonably infer wantonness." Cash, 603

14

So. 2d at 1003; <u>see also</u> <u>Askew v. R & L Transfer, Inc.</u>, 676 F. Supp. 2d 1298 (M.D. Ala. 2009) (Thompson, J.). Summary judgment will be granted in favor of Triumph and Williams on the plaintiffs' wantonness claim.


### B. Negligent- and Wanton-Training Claims Against Triumph

The plaintiffs also charge that, under Alabama law, Triumph is liable for negligently or wantonly training Williams.  To support a claim of negligent or wanton training, the plaintiffs must demonstrate that (1) Williams committed a tort recognized under Alabama law, <u>see</u> <u>Stevenson v. Precision Standard, Inc.</u>, 762 So. 2d 820, 824 (Ala. 1999); (2) Williams was incompetent to drive his commercial vehicle, <u>see</u> <u>Lane v. Central Bank of Alabama, N.A.</u>, 425 So. 2d 1098, 1100 (Ala. 1983); (3) Triumph had actual notice of Williams's incompetence or would have known had it exercised due diligence, <u>see</u> <u>Armstrong Bus. Servs., Inc. v. AmSouth Bank</u>, 817 So. 2d 665, 682 (Ala. 2001); and (4) Triumph either negligently or wantonly failed to respond to

15

this notice.  See id.; see also Askew, 676 F. Supp. 2d
at 1304.  Triumph argues that the plaintiffs cannot
satisfy these elements because there is no evidence
that Williams was an incompetent driver or that it knew
or should have known of Williams's alleged
incompetence.

"Incompetence" is defined as the "state or fact of
being unable or unqualified to do something."  Halford
v. Alamo Rent-A-Car, LLC, 921 So. 2d 409, 416 (Ala.
2005) (quoting Black's Law Dictionary 780 (8th ed.
2004)).  In Alabama, "the incompetence of a driver is
measured by the driver's demonstrated ability (or
inability) to properly drive a vehicle," Halford, 921
So. 2d at 413-14, and this may be measured by
characteristics such as "general incompetence" or
"habitual negligence."  Edwards v. Valentine, 926 So.
2d 315 (Ala. 2005).

The plaintiffs make two arguments to support their
contention that Williams was incompetent.  First, they
argue that Triumph's failure to train Williams properly

means that he necessarily was incompetent; in the alternative, they argue that Williams's driving record and history of violations establish incompetence.

The court rejects the first argument. Williams was a professional commercial driver with several years of experience. He earned his commercial driver's license after receiving training and education at a technical college, and he passed the necessary tests to obtain his commercial license. He worked several different commercial-truck-driving jobs prior to and between his terms of employment at Triumph, and he passed a road test when hired by Triumph. Prior to the accident, he was trained in defensive driving by another trucking company. His commercial driver's license had never been suspended or revoked.

Moreover, the plaintiffs admitted at the pretrial conference that Williams's commercial-license training included instruction on safe lane changes. Common sense, too, dictates that drivers look before changing lanes. While it may be that Williams could have

17

benefitted from additional training, there is simply no evidence in the record that Triumph's failure to train Williams proximately caused this accident.

Under the plaintiffs' line of reasoning, any employee--even with extensive experience or a spotless record--would be considered "incompetent" unless fully retrained by each successive employer. This is simply not the standard in Alabama. Competence is not measured solely by training; it is measured by one's ability to perform the task at hand. See Halford, 921 So. 2d at 414, 417 (explaining that a driver's competence is measured by "actual ability to properly operate a motor vehicle," and is determined by "evidence relevant to [the driver's] mental and physical abilities and his or her prior driving experience and record."). That he was not trained by Triumph itself does not establish that Williams was incompetent.

Turning to the plaintiffs' second theory, the court also rejects the argument that Williams's driving

18

record establishes his incompetence. Williams has
several traffic violations on his personal driving
record, including a ticket for speeding issued when he
was driving his pregnant girlfriend to the hospital to
deliver their child; an accident from age 17, before he
received his commercial driver's license; a tag
violation; a seatbelt violation; and a failure to stop.
The only violation he has received while driving his
commercial vehicle is an overweight ticket.

An employee's "mistake or single act of negligence"
does not establish incompetence, because even "the most
competent may be negligent." Southland Bank v. A & A
Drywall Supply Co., Inc., 21 So. 3d 1196, 1217 (Ala.
2008) (internal citations omitted). But "one who is
habitually negligent may on that account be
incompetent." Id. (emphasis removed). Though Williams
has been cited for several moving violations, the
diverse circumstances behind each citation do not
establish the kind of 'habitual negligence' that
amounts to incompetence. Cf. Pritchett v. ICN Medical

19

_Alliance, Inc._, 938 So. 2d 933 (Ala. 2006) (holding that defendant's use of an improper safety technique during cosmetic surgery on 30 to 40 occasions evidenced habitual negligence and established a jury question on incompetence).

Williams had several years of truck-driving experience and a commercial driver's license in good standing, both demonstrating his "ability to properly handle an automobile on the road." _Halford_, 921 So. 2d at 414. As this court explained in _Askew_, "blemishes on an otherwise clean professional driving record do not amount, under the law, to incompetence. The law requires that a driver have had a 'demonstrated ability to properly drive a vehicle'; it does not require that he have a record completely free of mistake." _Askew_, 676 F. Supp. 2d at 1303 (citing _Halford_, 921 So. 2d at 413-14); _see, e.g._, _id_. (explaining that a driver's record with two moving violations and four minor accidents did not amount to incompetence); _Pryor v. Brown & Root USA, Inc._, 674 So. 2d 45, 52 (Ala. 1995)

("[Defendant]'s prior driving record--two speeding tickets and a suspended prosecution of a DUI charge over a 10-year period--is not sufficient to support a claim of negligent entrustment."); <u>Thompson v. Havard</u>, 235 So. 2d 853, 857 (Ala. 1970) ("[P]roof of two moving violations or accidents within a two year period prior to [the] accident ... is probably insufficient [to create a fact issue of the driver's incompetence.]") (internal citations omitted).

Even if the plaintiffs had established that Williams was incompetent, his employer could be liable for negligent or wanton training <u>only if</u> it knew or should have known about his incompetence and failed to respond adequately to that notice. But the plaintiffs have not presented evidence that Triumph had or should have had either notice or knowledge of any prior incident for which it might have needed to offer supplemental training.

The plaintiffs cite <u>Big B, Inc., v. Cottingham</u> to support their argument that employers may be held

21

liable for negligent training even when the employer is not on notice of prior similar offenses.  634 So. 2d 999 (Ala. 1993), abrogated on other grounds, Horton Homes, Inc. v. Brooks, 832 So. 2d 44 (Ala. 2001).  In Big B, a store manager was accused of making improper sexual advances toward a part-time employee, and he later sexually assaulted a suspected shoplifter.  The employer was sued by the shoplifter for failure to train, and the court found that a fact question remained as to whether the employer had properly trained the manager in how to detain and question shoplifters.  As the court explained, the employer had "reason to question [the manager's] fitness for employment" after it received notice of the first incident.  Id. at 1003.  Though the manager's incompetence arose in two factually different scenarios, the employer's liability for the second incident was based in its failure to address proactively a recurring problem: the mistreatment of women in the workplace.  In Big B, therefore, the court

22

was already on notice of past similar conduct.  Here, in contrast, Williams's employer was not only not on notice of past <u>general</u> incompetence, but was also not on notice of past <u>similar</u> conduct.

Because the plaintiffs have failed to put forth sufficient evidence of Williams's incompetence or any persuasive reason why Triumph should have been on notice of that alleged incompetence, summary judgment in favor of defendant Triumph on the plaintiffs' training claims is appropriate.

* * *

An appropriate order will be entered.

DONE, this the 8th day of April, 2015.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE